# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

MEGHAN WEISEN,

        Plaintiff,

    v.

NORTHUMBERLAND COUNTY
DEPARTMENT OF ADULT
PROBATION AND PAROLE,

        Defendant.

No. 4:24-CV-00327

(Chief Judge Brann)

## MEMORANDUM OPINION

### JANUARY 16, 2026

## I. INTRODUCTION

Plaintiff Meghan Weisen ("Plaintiff") filed a complaint against Northumberland County, Department of Adult Probation and Parole ("Defendant") on February 26, 2024.[1] Parties proceeded directly to discovery, which closed on June 3, 2025.[2] Soon thereafter, Defendant filed the instant Motion for Summary Judgment pursuant to Federal Rule of Civil Procedure 56.[3] The motion is now ripe for disposition. For the reasons set forth below, it is granted in full.

---

[1]   Doc. 1 (Compl.).
[2]   Doc. 15 (Sch. Ord.).
[3]   Doc. 20 (Mot.).

## II.    BACKGROUND

### A.    Standard of Review

Under Federal Rule of Civil Procedure 56, summary judgment is appropriate where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."[4] Material facts are those "that could alter the outcome" of the litigation, "and disputes are 'genuine' if evidence exists from which a rational person could conclude that the position of the person with the burden of proof on the disputed issue is correct."[5] A defendant "meets this standard when there is an absence of evidence that rationally supports the plaintiff's case."[6] Conversely, to survive summary judgment, a plaintiff must "point to admissible evidence that would be sufficient to show all elements of a prima facie case under applicable substantive law."[7]

Party testimony is sufficient to raise a genuine dispute of material fact on an issue: "'a single, non-conclusory affidavit or witness's testimony, when based on personal knowledge and directed at a material issue, is sufficient to defeat summary judgment.'"[8] "This is true even where, as here, the information is self-serving."[9] However, courts are not required to credit conclusory testimony, that is, evidence

---

[4]    Fed. R. Civ. P. 56(a).
[5]    *EBC, Inc. v. Clark Bldg. Sys., Inc.*, 618 F.3d 253, 262 (3d Cir. 2010).
[6]    *Clark v. Mod. Grp. Ltd.*, 9 F.3d 321, 326 (3d Cir. 1993).
[7]    *Id.*
[8]    *Paladino v. Newsome*, 885 F.3d 203, 209 (3d Cir. 2018) (quoting *Lupyan v. Corinthian Colleges, Inc.*, 761 F.3d 314, 320 (3d Cir. 2014)).
[9]    *Id.*

failing to set forth specific factual assertions and instead regurgitating opinions and conclusions.[10] "[C]onclusory testimonial evidence cannot defeat summary judgment."[11] Moreover, "'[i]n considering a motion for summary judgment, a district court may not make credibility determinations or engage in any weighing of the evidence.'"[12] Instead, the Court must believe the non-moving party's evidence, drawing all justifiable inferences in his favor.[13]

In assessing "whether there is evidence upon which a jury can properly proceed to find a verdict for the [nonmoving] party,"[14] the Court "must view the facts and evidence presented on the motion in the light most favorable to the nonmoving party."[15] "If a party fails to properly support an assertion of fact or fails to properly address another party's assertion of fact as required by Rule 56(c)," the Court may "consider the fact undisputed for purposes of the motion."[16] Finally, although "the court need consider only the cited materials, . . . it may consider other materials in the record."[17]

---

[10]  *Daimler v. Moehle*, No. 23-2611, 2025 WL 1355138, at *5 (3d Cir. May 9, 2025).

[11]  *Id.*; *see also Gonzalez v. Sec'y of Dep't of Homeland Sec.*, 678 F.3d 254, 263 (3d Cir. 2012).

[12]  *Paladino*, 885 F.3d at 209-210 (quoting *Marino v. Indus. Crating Co.*, 358 F.3d 241, 247 (3d Cir. 2004)).

[13]  *Id.* at 210.

[14]  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986) (quoting *Schuylkill & Dauphin Imp. Co. v. Munson*, 81 U.S. 442, 448 (1871)).

[15]  *Razak v. Uber Techs., Inc.*, 951 F.3d 137, 144 (3d Cir. 2020).

[16]  Fed. R. Civ. P. 56(e)(2); *see also Weitzner v. Sanofi Pasteur Inc.*, 909 F.3d 604, 613-14 (3d Cir. 2018).

[17]  Fed. R. Civ. P. 56(c)(3).

### B.    Statement of Facts

With that standard outlining the Court's framework for review, I now turn to the facts. As referenced above, I must view the facts and evidence, and resolve all doubts, in the light most favorable to the nonmoving party. With that in mind, the facts for the purposes of this motion are as follows.

Meghan Weisen was employed by Northumberland County Adult Probation and Parole Department from 2014 until 2022.[18] Plaintiff was terminated on November 3, 2022 by President Judge Charles Saylor.[19] During the time she was employed by Defendant, Plaintiff experienced a few core, main instances of disparate treatment in addition to what she posits as a broader sense of inequality in assignments and office environment.[20]

First, Plaintiff was subjected to repeated inappropriate comments by Rich Frampton ("Frampton"), an employee of Snyder County Prison.[21] Frampton was not an employee of Defendant's, but Plaintiff interacted with him in her duties as a probation officer.[22] Frampton made calls and sent emails to Plaintiff which made her uncomfortable, saying things like "it's so nice to hear your voice," and asking if her "knees went weak at the site [sic] of him."[23] When Plaintiff brought the comments

---

[18]  Doc. 21-7 (Exhibit G); Doc. 26 (Response to Statement of Undisputed Material Facts "RSUMF") ¶ 1.
[19]  Doc. 26 ¶ 34, 43.
[20]  Doc. 26
[21]  Doc. 26 ¶ 5.
[22]  *Id.* ¶ 4, 6.
[23]  *Id.* ¶ 5.

to the attention of her then supervisor, Jimmy Cortelyou, he said something to the effect of "maybe you should just lay on your back and take one for the team."[24] Cortelyou also told Plaintiff to print off the emails from Frampton and provide them to Cortelyou, to delete the electronic versions, and to cease communications with Frampton.[25] Plaintiff did so, and besides having to occasionally see Frampton in her role, she did not engage in any further conversations or communications with him.[26] Afterwards, Cortelyou and other male coworkers of Plaintiff's made comments to her minimizing the incident and making fun of the situation.[27] Plaintiff does not remember specifically which coworkers were making the comments, but rather perceived a general feeling regarding this interaction within the office.[28]

Next, there was an incident with the fit of Plaintiff's bulletproof vest. In September 2021, Defendant had been having issues with their bulletproof vest supplier; specifically, several officers' vests did not fit correctly.[29] The fitting issue was particularly prevalent with female officers.[30] Plaintiff was one such affected officer; her vest was far too large for her frame.[31] Plaintiff complained of the improper fit of her vest to Deputy Brian Updegrove ("Updegrove"), and, in response,

---

[24]  *Id.* ¶ 7.
[25]  *Id.* ¶ 9.
[26]  *Id.* ¶ 10.
[27]  *Id.* ¶ 11.
[28]  *Id.*
[29]  *Id.* ¶ 15.
[30]  *Id.*
[31]  *Id.*

he said "maybe you should do something about your tits" and commented that her body, including her breasts, were smaller after her recent weight loss.[32] Updegrove had Plaintiff run down the hallway to demonstrate how the vest bounced.[33] When she did so, he laughed and directed her to show show Heitzman, her supervisor, that the vest fit poorly as well.[34] Plaintiff did not, at that time, report the comments to her supervisor.[35] Another female employee, Brianne Herring ("Herring"), had similar problems with her vest; Plaintiff witnessed a conversation between Herring and Updegrove about the fit of Herring's vest where Updegrove said "you girls and all your issues with your boobs."[36]

Finally, Plaintiff perceived an overall discriminatory environment.[37] Plaintiff made complaints to Heitzman and Updegrove of the "general nature of the environment in the office," being the "attitude in the office that . . . if you are a female you would be treated less favorably than males."[38] Plaintiff believed that "females were held to . . . more scrutiny and weren't allowed to do as many things

---

[32]  *Id.* ¶ 16.
[33]  *Id.*
[34]  *Id.*
[35]  *Id.* ¶ 24.
[36]  *Id.* ¶ 20.
[37]  The Court is not required to credit conclusory allegations, and will largely disregard most of Plaintiff's allegations about the environment as too generalized, conclusory, and devoid of specific factual allegations to survive a motion for summary judgment. The Court lays these facts out to accurately summarize Plaintiff's testimony, and will address their significance below.
[38]  Doc. 21-2 (Exhibit A) 52:13-24.

because they were female."[39] Plaintiff testified that she was "required to do a lot more in a bigger variety of things than other officers and that female officers were frequently required to and expected to do more administrative tasks than male officers who were expected to be out in the field the majority of the time."[40]

Few discrete instances of Plaintiff's generalized environmental claims can be discerned from the record.[41] Three female officers were assigned to handle the "PSI reports" and field officers did not have to do them.[42] Plaintiff complained about management of assignments and was "offered to switch to a field position if I didn't like my office job," among other suggestions.[43] Plaintiff also testified that she "signed up for a lot of shifts" while the office was short-staffed, and was being "blocked" from picking up shifts because the "amount of hours that [she] worked . . . made other people look bad."[44] Other staff, including male staff, were not being blocked.[45] Plaintiff complained to her supervisor as well as other employees that she believed she was being restricted from going out in the field.[46]

---

[39]    Doc. 21-1 at 56:3-5.
[40]    Doc. 26 ¶ 25; Doc. 21-1 at 53:19-54:8.
[41]    Plaintiff's answer to the statement of material facts largely cites to Plaintiff's deposition testimony, Doc. 21-1 (Exhibit A) and the emails Plaintiff sent to an officer "Ron McClay," Doc. 21-5 (Exhibit E).
[42]    Doc. 26 ¶ 27.
[43]    *Id.* ¶ 27.
[44]    *Id.* ¶ 30.
[45]    *Id.*
[46]    Doc. 21-1 at 68:6-23.

Over Labor Day Weekend in September 2022, Plaintiff slept at the office without prior authorization.[47] Plaintiff did so because she was going through a divorce at the time, and had previously worked late at the office without issue.[48] Plaintiff was aware of another employee who had a cot at the office, and was not aware that staying overnight at the office was prohibited and terminable.[49] Plaintiff's stay at the office was discovered because Plaintiff placed her co-workers' timesheets on their desks when she found them elsewhere.[50] Plaintiff had once been previously disciplined for disturbing other employees' possessions.[51]

Chief Heitzman recommended to President Judge Saylor that Plaintiff be terminated. Judge Saylor authorized her termination, and, in his declaration, stated that he did so because of Plaintiff's unauthorized use of overnight facilities and her previous disciplinary history.[52] There is no evidence in the record that indicates that Judge Saylor knew that Plaintiff had complained of sexual harassment or discrimination.[53]

---

[47]  Doc. 26 ¶ 37.
[48]  Doc. 26 ¶¶ 38, 40.
[49]  Doc. 26 ¶ 38.
[50]  Doc. 26 ¶ 35.
[51]  Doc. 21-12 (Exhibit L).
[52]  Doc. 21-8 (Exhibit H – Saylor Declaration).
[53]  Doc. 21-8 (Exhibit H – Saylor Declaration). In Plaintiff's response to the statement of material facts, Doc. 26, Plaintiff disputes these facts only by arguing that the "veracity and credibility of the witnesses' is for the factfinder to determine at trial." Doc. 26 at ¶ 45. However, the Court need not shut its eyes to uncontroverted witness testimony supporting Defendant merely because the Court ought not weigh credibility. *See Elliott v. Delaware State Univ.*, 879 F. Supp. 2d 438, 441 n.1 (D. Del. 2012) ("[T]he Court accepts the Plaintiff's gloss on the facts when there is a dispute, but also accepts [witness] testimony to the extent it is undisputed.").

Plaintiff filed her complaint with this Court on February 26, 2024.[54] She raised three types of claims, each under both the PHRA and Title VII: sexual harassment hostile work environment claims, gender discrimination, and retaliation.[55]

## C.    Analysis

### 1.    Immunity from the PHRA

"The Third Circuit has repeatedly held that "'Pennsylvania's judicial districts, including their probation and parole departments, are entitled to Eleventh Amendment immunity.'"[56] Pennsylvania has not waived its Eleventh Amendment immunity, and "federal courts throughout the Commonwealth have consistently held that the applicable language of the PHRA does not operate as a waiver of Pennsylvania's Eleventh Amendment immunity" for suits brought in federal court.[57] The Pennsylvania Supreme Court has also held that separation of powers principles bar PHRA claims against the state judiciary.[58]

As other district courts in the Third Circuit have noted, probation departments are typically part of the state judiciary.[59] Here, Defendant has established that

---

[54]  Doc. 1 (Compl.).

[55]  *Id.*

[56]  *Wenhold v. Lehigh County Adult Probation and Parole*, No. 20-CV-3681, 2021 WL 680106, at *2 (E.D. Pa. Feb. 22, 2021) (quoting *Haybarger v. Lawrence Cnty. Adult Prob & Parole*, 551 F.3d 193, 197 (3d Cir. 2008)).

[57]  *Mitchell v. Miller*, 884 F. Supp. 2d 334, 380 (W.D. Pa. 2012).

[58]  *Renner v. Court of Common Pleas of Lehigh County*, 660 Pa. 225, 280 (2020); *see also Giordano v. Unified Judicial System of Pennsylvania*, No. 20-277, 2021 WL 1193112, at *4 (E.D. Pa. Mar. 30, 2021).

[59]  *See, e.g., Haybarger*, 551 F.3d 193, 198 (3d Cir. 2008) ("We have held that Pennsylvania's judicial districts, including their probation and parole departments, are entitled to Eleventh

Plaintiff worked for the judiciary as a probation officer and, therefore, is immune from suits under the PHRA. Defendant has submitted evidence that Plaintiff's termination was by President Judge Saylor,[60] and provided multiple cases of courts noting that probation is an arm of the judiciary.[61] Plaintiff was also hired by another judge, the Honorable William Wiest.[62] There has been no evidence submitted for this Court to conclude that the probation department here, unlike every other probation department known to this Court, was not a branch of the judiciary.

Furthermore, Plaintiff provides no cases where a probation officer was found to not be an agent of the judiciary or where the PHRA applied to a probation officer.[63] Nor does Plaintiff provide evidence that this specific probation office was outside of the purview of the judiciary, pointing out only that her W-2 forms had "Northumberland County" printed on them.[64] She also points to a written reprimand as purported evidence that county employees were disciplining Plaintiff.[65] As to the latter, the listed employee there is only described as "Chief Probation Officer," and

---

Amendment immunity."); *Slaughter v. Dauphin County Adult Probation*, No. 1:24-CV-1170, 2024 WL 5697099, at *4 (M.D. Pa. Oct. 29, 2024) ("County probation officers are an arm of the state, as part of the judiciary, and are entitled to Eleventh Amendment immunity against intentional tort claims.") *R&R adopted at* No. 1:24-CV-01170, 2024 WL 5695924 (M.D. Pa. Dec. 19, 2024).

[60]    Doc. 21-8 (Exhibit H – Saylor Declaration).

[61]    Doc. 21 at 3-4.

[62]    Doc. 21-7 (Exhibit G).

[63]    Doc. 25 (Br. in Opp.) at 5-6.

[64]    *Id.*; Doc. 25-1 (Plaintiff's Exhibit 1).

[65]    Doc. 25 at 6, Doc. 21-12 (Defendant's Exhibit L).

the document does not indicate that this position is a county one.[66] That leaves only the W-2 forms with "Northumberland County" on them. Without more, there is insufficient evidence from which a rational person could conclude that the judiciary did not employ Plaintiff. Indeed, Plaintiff seems to rest on the hope that, somehow, the lack of evidence would raise a dispute of material fact;[67] however, at this stage in the litigation, Plaintiff cannot rest on allegations but must affirmatively supply such evidence.[68] Therefore, Plaintiff cannot sue Defendant under the PHRA.

Accordingly, summary judgment is appropriate for Counts II, IV, and VI, all of which raise claims under the PHRA. Those counts are consequently dismissed.

### 2.    Hostile Work Environment

With the PHRA claims dismissed, I turn now to Plaintiff's Title VII claims, beginning first with her hostile work environment sexual harassment claims. To establish a hostile work environment claim, a plaintiff must demonstrate that "1) the employee suffered intentional discrimination because of his/her sex, 2) the discrimination was severe or pervasive, 3) the discrimination detrimentally affected the plaintiff, 4) the discrimination would detrimentally affect a reasonable person in like circumstances, and 5) the existence of *respondeat superior* liability."[69] For this claim, Plaintiff would need to prove that the inappropriate workplace conduct was

---

[66] *Id.*
[67] Doc. 25 at 6.
[68] *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).
[69] *Mandel v. M&Q Packaging Corp.*, 706 F.3d 157, 167 (3d Cir. 2013).

so "severe or pervasive" that it created a "hostile, intimidating, or offensive work environment."[70]

However, prior to bringing a hostile work environment claim under Title VII, an employee must first file "a charge with the Equal Employment Opportunity Commission (EEOC) either 180 or 300 days 'after the alleged unlawful employment practice occurred.'"[71] "A plaintiffs attempt to obtain relief under federal law from a defendant's alleged employment discrimination under Title VII 'may proceed only if he filed his administrative charge of discrimination within 300 days of the unlawful employment actions he challenges.'"[72] Defendant points out that, where a state agency has no jurisdiction to grant relief, as here, plaintiffs are entitled to the shorter 180 day deadline.[73] Plaintiff filed a complaint/charge of discrimination with the PHRC and the EEOC on December 2, 2022. Plaintiff has not shown a discriminatory act that occurred within either deadline and, therefore, the hostile work environment claim must be dismissed as untimely.

Plaintiff argues that her claim should not be barred as untimely under the "continuing violation" doctrine.[74] "The continuing violation theory allows a 'plaintiff [to] pursue a Title VII claim for discriminatory conduct that began prior to

---

[70]  *Pittman v. Continental Airlines, Inc.*, 35 F. Supp. 2d 434, 440 (E.D. Pa. 1999).

[71]  *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 105 (2002).

[72]  *Nahouraii v. Indiana Univ. of Pa.*, No. 2:11-CV-00973, 2015 WL 401422, at * 13 (W.D. Pa. Jan. 28, 2015) (quoting *Watson v. Eastman Kodak Co.*, 235 F.3d 851, 854 (3d Cir. 2000).

[73]  Doc. 21 (Br. in Supp.) at 6 n.1; *Benn v. First Jud. Dist. Of Pa.*, No. 98-5730, 2000 WL 1236201, at *2 (E.D. Pa. Apr. 26, 2000) *aff'd* 426 F.3d 233 (3d Cir. 2005).

[74]  Doc. 25 (Br. in Opp.) at 7.

the filing period if he can demonstrate that the act is part of an ongoing practice or pattern of discrimination of the defendant.'"[75] Such acts "'can occur at any time so long as they are linked in a pattern of actions which continues into the applicable limitations period.'"[76] "To allege a continuing violation, the plaintiff must show that all acts which constitute the claim are part of the same unlawful employment practice and that at least one act falls within the applicable limitations period."[77]

Plaintiff has failed to show that any acts extended into the applicable limitations period. The two instances of discrimination Plaintiff points to are the Rich Frampton and vest incidents, with the former ending in 2017[78] and the latter occurring in August 2021.[79] Other than these instances, Plaintiff falls back on her generalized complaints of the environment and atmosphere in the probation office.[80] However, at the summary judgment stage, vague statements that harassment occurred frequently are insufficient.[81]

---

[75] *Rush v. Scott Specialty Gases*, 113 F.3d 476, 481 (3d Cir. 1997) (quoting *West v. Phila. Elec. Co.*, 45 F.3d 744, 754 (3d Cir. 1995)).

[76] *Mandel v. M&Q Packaging Corp.*, 706 F.3d 157, 165 (3d Cir. 2013) (quoting *O'Connor v. City of Newark*, 440 F.3d 125, 127 (3d Cir. 2006)).

[77] *Id.* at 165-66.

[78] Doc. 26 ¶ 14.

[79] *Id.* at ¶ 19.

[80] Doc. 25 (Br. in Opp.) at 8-11 (Pointing to no specific instances besides those with Frampton and the vest, and instead arguing that "Plaintiff averred that she experienced continuous harassment during her employment. . . . Plaintiff detailed and outlined a constant environment of harassment in her complaint to the Unified Judicial System of Pennsylvania. . . . the five years of harassment in conjunction with Plaintiff's asserted specific instances . . . ." without any citation of specific examples or to the record).

[81] Parties agree that a plaintiff may not rely "merely on 'vague statements' to defeat summary judgment" and that unsubstantiated, general allegations that inappropriate conduct occurred "all the time" may be excluded. *Nitkin v. Main Line Health*, 67 F.4th 565, 569, 571 (3d Cir.

Combing the record, the only two possible other examples of discrimination Plaintiff references are that 1) three female clerks had to do the PSI reports, and 2) Plaintiff was being "blocked" from picking up additional shifts. Plaintiff does not tie either of these instances to a time period within the applicable deadline to file, but the Court will construe the doubt in Plaintiff's favor and analyze these instances as if they had occurred within the relevant time period.

First, Plaintiff complained to her union rep that only three employees completed PSI reports; those employees were all female.[82] In this complaint to the union rep, Plaintiff makes no reference to gender discrimination being the cause of report assignments, rather taking issue with the office's organization overall and management of tasks from a logistical lens.[83] Moreover, there is no evidence in the

---

2023) ("[Plaintiff] admitted during her deposition that she could not describe other instances from the group meetings where anything untoward was said. . . . Thus, the District Court properly excluded [Plaintiff's] general, unsubstantiated allegations that the alleged conduct occurred 'regularly' or 'all the time.'" (internal quotation omitted).

Plaintiff requests that the Court consider the United States Court of Appeals for the Second Circuit's reasoning in *Knox v. CRC Mgmt. Co., LLC*, which held that a plaintiff need not provide specific descriptions of every instance of harassment to survive summary judgment. 134 F.4th 39, 52-54 n.5 (2d Cir. 2025). However, *Knox* does not provide the support that Plaintiff alludes to; in *Knox*, the plaintiff was still able to provide a litany of specific examples of the daily harassment. *Id.* ("We cannot say that the daily comments that Knox alleges are insufficient as a matter of law."). The difference here is that Plaintiff *has not* alleged daily comments; instead, she has alleged a more generalized atmosphere of discrimination and points only to the two specific instances discussed for support. *See* Doc. 26 ¶¶ 25, 26; Doc. 21-1 (Exhibit A) at 52:18-53:3 ("…it's hard to remember specifics; however, there was the attitude in the office that, uhm, if you are a female you were treated less favorably than males"). Without evidence or specifics, statements that discrimination occurred daily are merely conclusory and need not be credited.

[82] Doc. 21-5 (Exhibit E).

[83] *Id.*

record to conclude that report assignments were being doled out in a discriminatory way. Indeed, the same email explains that Plaintiff worked as an "office probation officer"[84] and that field officers did not complete reports.[85] In Plaintiff's complaint making reference to this assignment structure, her issue is with the administrative staffing, i.e. that there used to be more officers completing reports and now there are insufficient officers for the workload.[86]

At this stage, Plaintiff cannot survive by mere allegations of discrimination and must affirmatively point to actual evidence of it, or at least testify as to specific examples and methods. She has not, and, therefore, the Court does not see this as an instance of discrimination falling within the applicable time period.

Next, Plaintiff said she was being blocked from picking up shifts. This is again too generalized to be cognizable; it is yet another version of the same, conclusory statements that discrimination occurred "all the time." Plaintiff gives no reference to when she was blocked from picking up shifts or who was blocking her. Moreover, the reason that Plaintiff herself gives for the blocking is entirely unrelated to discrimination. Plaintiff said she was being blocked because she "signed up for a lot of shifts, as often as [she] could" and because she "made a lot of people angry with the amount of hours that [she] worked."[87] The offhand reference that "[o]ther staff,

---

[84]  *Id.* at 2.
[85]  *Id.* at 3.
[86]  *Id.*
[87]  Doc. 26 ¶ 30.

males, were being allowed to go out"[88] is insufficient to transform this generalized grievance into a discrete example of discrimination.

In short, there is no evidence, by way of testimony or otherwise, from which this Court can conclude that Plaintiff was being assigned administrative tasks that other officers were not because she was a woman. Similarly, there is also no evidence from which this Court can conclude that Plaintiff was being blocked from picking up shifts because she was a woman. The only instances of intentional discrimination that Plaintiff points to are those related to Frampton comments and the fitting of the vest, both of which concluded well prior to the applicable filing deadline.

Therefore, Plaintiff has not shown that any act of intentional discrimination occurred within the necessary time period and, accordingly, her hostile work environment claim fails as untimely.

### 3.    Gender Discrimination

"To prevail in a sex discrimination claim under Title VII, a plaintiff must first establish by a preponderance of the evidence a *prima facie* case of discrimination."[89] The plaintiff must show that "1) s/he is a member of a protected class, 2) s/he was qualified for the position s/he sought to attain or retain, 3) s/he suffered an adverse employment action, and 4) the action occurred under circumstances that could give

---

[88]    *Id.*
[89]    *Mandel*, 706 F.3d at 169.

rise to an inference of intentional discrimination."[90] If Plaintiff succeeds in proving the prima facie case, then the burden shifts to the defendant "to articulate some legitimate, nondiscriminatory reason for the employee's rejection."[91] Then, "should the defendant carry this burden, the plaintiff must then have an opportunity to prove by a preponderance of the evidence that the legitimate reasons offered by the defendant were not its true reasons, but were a pretext for discrimination."[92]

The parties are, of course, in agreement that Plaintiff was a woman, and, thus, a member of a protected class. Parties also do not dispute that Plaintiff was terminated by Defendant, which is an adverse employment action, and is seemingly where Plaintiff believes the discrimination occurred.[93] The heart of the dispute lies with the fourth element: whether the termination occurred under circumstances that could give rise to an inference of intentional discrimination.

There are several routes that a plaintiff can take to raise an inference of intentional discrimination. The road most trod is comparator evidence, or evidence that an employer treated similarly situated individuals not in a plaintiff's protected class more favorably than the plaintiff.[94] However, an inference of discrimination can also be supported by "evidence of similar . . . discrimination of other employees,

---

[90] *Id.*
[91] *Texas Dept. of Community Affairs v. Burdine*, 450 U.S. 248, 253 (1981) (citing to *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973)).
[92] *Id.*
[93] *Abramson v. William Paterson College of New Jersey*, 260 F.3d 265, 288 (3d Cir. 2001).
[94] *See Mammen v. Thomas Jefferson Univ.*, 523 F. Supp. 3d 702, 721 (E.D. Pa. 2021).

or direct evidence of discrimination from statements or actions by her supervisors suggesting . . . animus."[95]

Here, Plaintiff relies on comparator evidence to raise an inference of discrimination. Specifically, she relies on other individuals who she claims violated policy but were not discharged as she was. The Third Circuit recently clarified who plaintiffs may use as a comparator: employees "need not be identical" but must be similarly situated in "all material respects."[96] Relevant factors in this analysis include "whether the employees dealt with the same supervisor, were subject to the same standards, and shared similar job responsibilities."[97] The Third Circuit also stated that employees cannot be similarly situated if they hold a different job title or work in a different department.[98] Moreover, when the issue is misconduct, purported comparators "must have committed offenses of 'comparable seriousness.'"[99] Stated differently, both Plaintiff and the comparator must have "'engaged in similar conduct without such differentiating or mitigating circumstances as would distinguish their conduct or the employer's treatment of them.'"[100] Courts may

---

[95] *Golod v. Bank of America Corp.*, 403 F. App'x 699, 702 (3d Cir. 2010) (emphasis added); *see also Mammen*, 523 F. Supp. at 721 (E.D. Pa. 2021) (quoting *Golod*).

[96] *See Qin v. Vertex, Inc.*, 100 F.4th 458, 474 (3d Cir. 2024).

[97] *Id.*

[98] *Id.*

[99] *Opsatnik v. Norfolk Southern Corp.*, 335 F. App'x 220, 223 (3d Cir. 2009) (quoting *Wright v. Murray Guard, Inc.*, 455 F.3d 702, 710 (6th Cir. 2006)).

[100] *Hobson v. St. Luke's Hosp. and Health Network*, 735 F. Supp. 2d 206, 214 (E.D. Pa. 2010) (quoting *Houston v. Easton Area Sch. Dist.*, 355 F. App'x 651, 654 (3d Cir. 2009)).

18

properly grant summary judgment when it is clear that "no reasonable jury could find that the similarly situated requirement has been met."[101]

As comparators, Plaintiff points to a variety of other employees who violated policy and were not fired.[102] However, Plaintiff has not shown that these employees committed similar conduct without differentiating or mitigating circumstances. First, Plaintiff points to Deputy Director Updegrove as a comparator; with a different title and position, Updegrove is not similarly situated to Plaintiff.[103] Moreover, Updegrove had authorization to utilize Defendant's property before he did so, which means his conduct was unlike Plaintiff's.[104] Next, Plaintiff points to Ron McClay and Dan Shoop, probation officers who used Defendant's vans without authorization.[105] While the most similar violation to Plaintiff's, using company property without authorization, taking a van that the employee is authorized to use to an unauthorized location is not "of comparable seriousness"[106] to sleeping all weekend in the office. Moreover, only Plaintiff, not the identified comparators, had a past disciplinary incident.[107] Additionally, the difference between treatment in

[101] *Hampshire v. Bard*, 793 F. App'x 75, 80 (3d Cir. 2019).
[102] Doc. 1 ¶¶ 40-43.
[103] *Qin*, 100 F.4th at 474.
[104] Doc. 21-13 (Exhibit M).
[105] Doc. 1 ¶¶ 41, 43.
[106] *Opsatnik*, 335 F. App'x at 223.
[107] Doc. 26 ¶¶ 41, 53, 57.

Plaintiff and these officers are not so different; both unauthorized vehicle users received 10 day suspensions.[108]

Finally, Plaintiff argues that she is similarly situated to Skylar Ebner, a probation officer who left his firearm out on a desk, and probation officer Henrich, who was reprimanded for effectuating an arrest while working alone in the field.[109] These violations are also too dissimilar from Plaintiff's to compare, as the purported comparators' violations involved breaches of safety protocol rather than unauthorized use of company property. Not every violation of policy situates violative employees similarly.[110]

Plaintiff presents no other evidence that raises an inference of discrimination in her firing and, therefore, has not met her *prima facie* case. However, even if the comparators were similarly situated to Plaintiff, she has not met her burden to prove that Defendant's proffered reason for her termination, namely the weekend stay in the office and prior disciplinary history, were a pretext for discrimination.[111] To show pretext on summary judgment, a plaintiff can "'discredit the proffered reasons, either circumstantially or directly.'"[112] Plaintiffs do so by showing "such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the

---

[108]  Doc. 26 ¶¶ 52, 56; Doc. 21-14 (Exhibit N); Doc. 21-16 (Exhibit P).

[109]  Doc. 1 at ¶ 42; Doc. 26 ¶ 58-60.

[110]  *Opsatnik*, 335 F. App'x at 223.

[111]  *Texas Dept. of Community Affairs*, 450 U.S. at 253.

[112]  *Kogan v. T-M Automotive, Inc.*, No. 22-0519, 2023 WL 2588550 (E.D. Pa. Mar. 20, 2023) (quoting *Fuentes v. Perskie*, 32 F.3d 759, 762 (3d Cir. 1994)) (cleaned up).

employer's proffered legitimate reasons for its action that a reasonable factfinder could rationally find them 'unworthy of credence,' and hence infer 'that the employer did not act for [the asserted] nondiscriminatory reasons.'"[113] The factual dispute is whether "discriminatory animus motivated the employer, not whether the employer is wise, shrewd, prudent, or competent."[114]

Plaintiff has provided no evidence that Defendant's proffered reason for terminating Plaintiff is pretext. Defendant has submitted the declaration from President Judge Saylor, who authorized her termination, stating that he did so based on the weekend unauthorized stay in the office as well as her prior history of discipline.[115] Plaintiff has admitted to the conduct at issue, staying overnight all weekend in the office, which "lends credibility" to Defendant's stated rationale.[116] Besides arguing that other employees broke policy and were not fired, the only evidence of discrimination that Plaintiff points to is the Frampton and vest incidents, which occurred well prior to her termination.[117] Plaintiff has not shown that these incidents were connected to her firing; the firing was authorized by President Judge Saylor who, from the record, played no part in the day-to-day operations of the

---

[113] *Id.*

[114] *Id.*

[115] Doc. 21-8 (Exhibit H).

[116] *In re Tribune Media Company*, 902 F.3d 384, 403 (3d Cir. 2018).

[117] Indeed, in brief, Plaintiff *only* points to comparator evidence as evidence raising an inference of discrimination in her gender discrimination section. Doc. 25 at 13-15. Plaintiff does not address pretext at all. *Id.*

probation office.[118] Plaintiff has not testified or alleged that President Judge Saylor fired her because of her gender, nor that his decision was in any way motivated by discriminatory animus. As it stands, "the record does not give us sufficient basis to discredit [Defendant's] explanation for its employment decision."[119] Plaintiff rests on the hope that summary judgment should be viewed strictly when addressing issues of intent and credibility;[120] however, Plaintiff must provide some evidence to raise a dispute around the Defendant's intent in the first instance.[121]

Therefore, I find that there is no genuine dispute of material fact as to Plaintiff's gender discrimination claims, and Defendant's motion for summary judgment is granted.[122]

### 4.    Retaliation

"To establish a *prima facie* case of retaliation under Title VII, a plaintiff must tender evidence that: '(1) she engaged in activity protected by Title VII; (2) the employer took an adverse employment action against her; and (3) there was a causal

---

[118] Doc. 21-8.

[119] *In re Tribune*, 902 F.3d at 403.

[120] Plaintiff states in brief that "pointing to evidence which calls into question the defendant's intent raises an issue of material fact," but has not herself pointed to that evidence. Doc. 25 at 5.

[121] At this stage, Plaintiff cannot rest on pleadings and allegations, but must instead provide evidence to raise a genuinely disputed fact. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

[122] *Cf Sowell v. Kelly Services, Inc.*, 139 F. Supp. 3d 684, 696-97 (E.D. Pa. 2015) (finding summary judgment inappropriate where the plaintiff testified that the "performance and attitude issues" raised to support her firing were entirely fabricated and provided contemporaneous notes and emails to support her assertion).

connection between her participation in the protected activity and the adverse employment action.'"[123] Parties are agreed that Defendant fired Plaintiff, so the elements in dispute here are the first and third.

The Court need not analyze the first element because Plaintiff's claim fails so clearly on the third. To make out a prima facie case of retaliation, Plaintiff must "produce evidence 'sufficient to raise the inference that her protected activity was the *likely reason* for the adverse [employment] action.'"[124] Plaintiff can raise that inference in a variety of ways, including, but not limited to, evidence of "an employer's inconsistent explanation for taking an adverse employment action," a "pattern of antagonism," or "temporal proximity 'unusually suggestive of retaliatory motive.'"[125]

Plaintiff asserts that her protected activity was a variety of complaints to employees about "disparate treatment and harassment."[126] Even assuming that Plaintiff engaged in a protected activity,[127] Plaintiff has adduced no evidence to

---

[123] *Moore v. City of Phila.*, 461 F.3d 331, 340-41 (3d Cir. 2006) (quoting *Nelson v. Upsala Coll.*, 51 F.3d 383, 386 (3d Cir. 1995)).

[124] *Carvalho-Grevious v. Delaware State Univ.*, 851 F.3d 249, 259 (3d Cir. 2017) (quoting *Kachmar v. SunGard Data Systems, Inc.*, 109 F.3d 173, 177 (3d Cir. 1997)) (emphasis in original).

[125] *Id.* at 260.

[126] Doc. 25 at 17-18.

[127] The Court assumes this for purposes of highlighting the dearth of evidence on the third element, and does not analyze in depth whether Plaintiff took a protected activity, but finds Plaintiffs' claim of a protected activity dubious at best. Plaintiff points to three sources for her protected activity: her answers to interrogatories, Doc. 25-2, her emails in Exhibit E, Doc. 21-5, and the notes of her complaints in Exhibit F, Doc. 21-6. *See* Doc. 25 at 17-18. As to Plaintiff's citation to Exhibits E and F as evidence of her complaints, Doc. 25 at 17-18, neither document raises a complaint of gender discrimination, instead highlighting Plaintiff's grievances about staffing

suggest that the protected activity was likely the reason for her termination. Besides Plaintiff's general assertions that she "complained about harassment . . . on multiple occasions,"[128] the latest concrete example of a complaint that Plaintiff provided occurred on May 20, 2022,[129] when she had a call with her supervisor Megan Kriner.[130] This is not so close in time as to be temporally suggestive of retaliation.[131]

Additionally, Plaintiff has not presented that Defendant gave "inconsistent explanations" for her termination nor has she shown a "pattern of antagonism."[132] Plaintiff alleges a "pattern of continued harassment," but, as discussed above, rests on the Frampton and vest fitting incidents from 2017 and 2021, respectively.[133] These incidents do not show a "pattern of antagonism" following "protected conduct" that gives rise to an inference of retaliation.[134] A pattern of antagonism, different than mere harassment, would involve showing that some actions were taken against Plaintiff that correlated with each instance of reporting.[135] At most, Plaintiff

---

generally and administrative management. The responses to interrogatories, Doc. 25-2, are more of the same generalized, conclusory language without reference to additional specific examples.

[128] Doc. 25-2 (Exhibit 2, Answers to Interrogatories).

[129] *See* Doc. 21-6 (Exhibit F).

[130] *Id.*

[131] *See, e.g., Andreoli v. Gates*, 482 F.3d 641, 650 (3d Cir. 2007) (where a five-month period before complaint and adverse action was insufficient to be temporally suggestive of causation).

[132] *Carvalho-Grevious*, 851 F.3d at 259.

[133] Doc. 25-2 (Exhibit 2).

[134] *Kachmar v. SunGard Data Sys. Inc.*, 109 F.3d 173, 177 (3d Cir. 1997).

[135] *See Kriss v. Fayette County*, 827 F. Supp. 2d 477, 495 (W.D. Pa. 2011) ("[A] 'pattern of antagonism' to support causation refers to intervening antagonism between the time of the protected activity and the time of the alleged retaliatory conduct.") (quoting *Marra v. Phila. Housing Auth.*, 497 F.3d 286, 302 (3d Cir. 2007)).

has shown one incident of antagonism; that being her supervisor's 2017 comment to her in response to her complaints about Frampton's harassment.[136] It does not appear that Plaintiff reported the vest fitting incident anywhere,[137] nor that her otherwise generalized comments, if any,[138] had an effect on the way that her supervisors and coworkers treated her.

Moreover, the evidence presented by Defendant demonstrates the lack of a causal chain between any adverse action and Plaintiff's firing. President Judge Saylor terminated Plaintiff, and, in his uncontroverted declaration, stated that he had no knowledge of any complaints made by Plaintiff about discrimination.[139] While the Court cannot weigh credibility of witnesses, Plaintiff has not presented any evidence to contest Judge Saylor's declaration or demonstrate the connection between Plaintiff's complaints and her termination.

Accordingly, I find that there is no genuine dispute of material fact on the record, as there is no evidence for any rational person to conclude a causal link existed between protected activity and adverse action. Therefore, Defendant's motion for summary judgment is granted as to Plaintiff's retaliation claim.

---

[136] Doc. 21-1 (Exhibit A) at 16:23-17:13.

[137] Doc. 26 ¶ 24. While Plaintiff disputes this and points out that the deposition only states that she did not immediately tell her supervisor of the comments, Plaintiff points to no other concrete occasion where she did so. *Id.*

[138] Without evidence or specific examples, the Court does not credit Plaintiff's repeated assertions that she complained all the time to her supervisors.

[139] Doc. 21-8 (Exhibit H) at ¶ 11-12.

## III.    CONCLUSION

For the reasons enumerated above, I find it appropriate to grant Defendant's motion for summary judgment on each of Plaintiff's claims. Plaintiff's claims are dismissed, and the Clerk of Court is directed to close this case.

An appropriate Order follows.

BY THE COURT:


_s/ Matthew W. Brann_
Matthew W. Brann
Chief United States District Judge